IN RE WILL OF SUDIE HARGROVE.

(Filed 28 June, 1933.)

**1. Evidence H c: Wills D h—Declaration in interest of declarant held incompetent as hearsay and irrelevant to issue of mental capacity.**

The nieces and nephews of deceased filed a caveat to her will which was tried solely on the question of the mental capacity of testatrix. Caveators introduced in evidence a declaration of their deceased father, brother of testatrix, which had been entered of record in the public records in a certain county of another state and which set forth declarant's contention that he had not been paid his distributive share of his father's estate and which sought to preserve evidence thereof for the benefit of declarant's wife. The will devised the property formerly comprising the estate of testatrix's father. *Held,* the declaration was in the interest of declarant and was incompetent as hearsay evidence and was irrelevant to the issue of mental capacity involved in the trial, and its admission constituted reversible error.

**2. Evidence H d—Declaration made by party interested in event is incompetent to prove pedigree.**

In order for a declaration as to pedigree to be competent in evidence it is required that it be made *ante litem motam* and that the declarant be disinterested, and a declaration made by the father of caveators which in substance sets forth the declarant's contention that he had not been paid his distributive share of his father's estate and failing to identify caveators as his sons is held incompetent to prove blood relationship in caveators' action to set aside the will of their father's sister disposing of property formerly comprising the estate of testatrix's father.

Civil action, before *Moore, Special Judge,* at December Term, 1932, of Sampson.

Sudie Hargrove died 15 April, 1930, leaving a last will and testament, which was executed on 27 February, 1906. The will is as follows: "This is to be a memorial to our father, Benjamin Hargrove from his daughters, E. J. and Sudie Hargrove.

1. "Sudie Hargrove, of the county of Sampson, in the State of North Carolina, near Faison, do give and bequeath to the trustees of the Episcopal Church in the Diocese of East Carolina, in the State of North Carolina, all my personal and real estate to have and hold, the real estate to be held in full for one hundred years. If, at the end of that time, the Bishop and trustees think it the best for the good of the church, they can sell one-half of the land and keep the half on which my father is buried. If, as time goes on, they, the bishop and trustees think best to sell more, they can sell all but one hundred acres, and this one hundred acres, which is to be around my father's grave, is to be held by the church as long as it stand.

"One-half of the income of this property is to be used for the good of the church, as the bishop and trustees shall decide; the other half to be used to send good preachers to the scattered church people, not in any particular place, but wherever the bishop, with his Savior to guide him, thinks it will help humanity to be better. A report of the use and the amount of the income is to be made by the bishop and trustees every year to the council of the Diocese.

"Now for the minor bequests: The Negroes that belonged to Benjamin Hargrove are to have one acre of ground to bury them and their families at the Negro graveyard. The Negroes that belonged to Benjamin Hargrove, and are on the place when I die, are to have a home their lifetime, not a living but a place they can call home, and fire wood for their personal use. At the termination of the lives of the said Negroes, their interest shall vest in the trustees of the Diocese of East Carolina, in the State of North Carolina, in like manner as the other has devised.

"Now, I want my dogs that I have when I die to be taken care of and not sold nor abused during their lifetime.

"Now my last request is to be buried by the church and be put away decently when I die.

"I hereby revoke all other wills by me heretofore made, and made 27 February, A.D. 1906, this will. Sudie Hargrove."

Thereafter, in 1931, E. C. Hargrove and B. F. Hargrove, nephews of the deceased, filed a caveat to the will, alleging that "Sudie Hargrove did not have the capacity to make and execute a will, and that she was not of sound and disposing mind and memory at and during the said time." The evidence tended to show that Ben Hargrove had five children, to wit, John A. Hargrove, William, George W., Elizabeth or Lizzie, and Sudie. William lost his interest in his father's estate by virtue of the power of sale in a mortgage. John A. also disposed of his interest in the estate. George W. Hargrove left North Carolina in 1877 or 1879, and did not return to Sampson County until 1923. Elizabeth or Lizzie Hargrove died in 1905, devising her property to her sister Sudie. The evidence further tended to show that the sisters, Elizabeth and Sudie, lived together, by themselves, until the death of Elizabeth, and thereafter the testatrix, Sudie Hargrove, lived alone until the time of her death. The plaintiffs are heirs at law of George W. Hargrove.

Approximately one hundred witnesses testified at the trial. The caveators offered approximately forty-three witnesses, and the propounders approximately fifty-eight witnesses. The testimony of these witnesses in many instances is totally irreconcilable. Many of the witnesses for the caveators testified that Sudie Hargrove had been crazy for many years and did not have sufficient mental capacity to make a will. The witnesses for the propounder testified that she was a college graduate, had been a school teacher, was an unusually bright and cultured woman, and several deeds and conveyances of land and timber were offered in evidence, which had been made and executed by the testatrix since the date of the will.

Four issues were submitted to the jury and two of them were answered by consent; that is, that the paper-writing was duly executed and that the caveators are the nephews and next of kin and heirs at law of Sudie Hargrove. The third and fourth issues were answered by the jury in the negative; that is, the jury found that the testatrix did not have sufficient mental capacity to execute a will, and that the paper-writing propounded for probate was not her last will and testament.

From judgment upon the verdict the propounders appealed.

*Butler & Butler for propounders.*
*J. Faison Thomson and Hugh Brown Campbell for caveators.*
*N. W. Outlaw of counsel.*

BROGDEN, J. George W. Hargrove, the brother of testatrix, and father of the caveators, left his home in Sampson County, North Carolina, in 1877, or 1879, and went to Texas. The caveators introduced in evidence over the objection of the propounders an affidavit purporting to have been made by George W. Hargrove, and recorded in Deed Book U-2, pp. 579 and 80, of the public records of the clerk of the county court of Lamar County, Texas. This affidavit is as follows: "State of Texas— county of Lamar County, Texas. Know all men by these presents: That I, G. W. Hargrove, now residence in said county and state, the said G. W. Hargrove, being a son of Benjamin Hargrove of the State of North Carolina and County of Sampson, the said Benjamin Hargrove being deceased, his property being proportioned amongst his heirs, to wit: John A. Hargrove, William H. Hargrove, George W. Hargrove, Elizabeth J. Hargrove, and Susan H. Hargrove in the prorata of said property each. of the heirs were perfectly satisfied with their part of said property, the said G. W. Hargrove, did bargain, sell and convey to said Elizabeth J. Hargrove his interest in said estate through Judge A. A. McCoy him the said judge having a power of attorney to settle off all debts that had accrued against said G. W. H. the amount of such was $1,000, one thousand dollars the said A. A. McCoy by my consent the said G. W. H. sell and convey to said Elizabeth J. Hargrove 430 acres of land in said county and State of N. C. situate 10 miles east of the county side and also where the Wilmington and Raleigh Co. roads cross the Goldsboro and Clinton Co. R. the boundaries of said land on the south the Goldsboro and Clinton R., on the east it extends to the six runs Chappel on the north B. S. H. Hargrove line on the west by a creek known as the Six Runs conditions of sale of said property, to wit: The said G. W. H. sold this said property to said E. J. H. for the sum of $2,600, twenty-six hundred dollars, whereas as $1,000 was cash and the remainder $1600 sixteen hundred in three notes, to wit: One for $900.00, one $500.00 and one $200.00, all three of notes were given payable on day after date with interest from date at 6 per cent these notes were given 20 December, 1879, in the city of Memphis, Tenn., whereas, said E. J. Hargrove has held said notes until 1 December, 1884, when the said G. W. H. such said notes to said E. J. H. Said notes retain liens on said property until paid. She E. J. H. states that the notes never reached their destine therefore I make this statement in case I should die before the matter is fixed up. Whereas, I, the said G. W. Hargrove, married George Ann the daughter of E. C. Allen of the State of Texas and county of Lamar and the said G. A. H. as being my lawful and weded wife becomes heir to said property at my death and if I should die before this matter is settled the undersigned

one will administer on my estate and pay to said as now Mrs. G. A. Hargrove the same this 2 April, 1885.    G. W. Hargrove."

The caveators further offered in evidence the power of attorney, executed by G. W. Hargrove on 25 January, 1879, and recorded in Book 46, page 33, of the public record of Sampson County.

After the affidavit had been offered in evidence and on the second day of the trial, the court instructed the jury as follows: "The court charges you that these portions of the deposition referring to the evidence and referring to the paper-writing, purporting to be a marriage license, and these exhibits attached to the deposition, marked Exhibits "A" and "B," are to be considered by you, if at all, to show the blood kinship between the caveators and the deceased, Miss Sudie Hargrove, if these paper-writings and evidences of paper-writings do tend to show. "Other than for the above purposes, the evidence of the paper-writings are withdrawn from the consideration of the jury."

From the foregoing ruling of the court the question arises: Was the evidence competent?

Obviously, it was not a declaration against interest, as interpreted by many decisions of this Court. *Ins. Co. v. R. R.,* 195 N. C., 693, 143 S. E., 516. Moreover, the kinship of the caveators to the testatrix was not seriously controverted at the trial. The caveat alleged that Sudie Hargrove left surviving her "as her only heirs at law and distributees two nephews, E. C. Hargrove and B. F. Hargrove; that the said paper-writing purporting to be the last will and testament of Sudie Hargrove, devised all of her property, as appears in Exhibit "A" of paragraph 1 of this caveat." Answering paragraph 3, the propounders said: "The respondents are not advised who are the only heirs at law and distributees of Sudie Hargrove, deceased, otherwise article 3 is admitted." As we interpret the pleadings, there was no express denial that the caveators were not the nephews of the deceased, but it was not admitted that the caveators were the "only heirs at law and distributees of deceased." An issue was framed as to whether the caveators were the nephews and next of kin and heirs at law of Sudie Hargrove, but the record discloses that this issue was answered by consent. However, if it be conceded that such an issue was material, the next inquiry to be determined is whether the affidavit was competent to prove pedigree or blood relationship. The rule of law was clearly expressed in *Jelser v. White,* 183 N. C., 126, 110 S. E., 849, as follows: "Elementary principles in the law of evidence exclude declarations as to pedigree unless it can fairly be assumed that the declarant is disinterested. Hence, it must affirmatively appear that the statement was made *ante litem motam;* and this expression is not restricted to the time of bringing suit, but is referred to the beginning of the controversy." The substance of the affidavit is

that George W. Hargrove, father of caveator, had not been paid for his share in his father's estate, and that his interest in the estate subsisted. Manifestly, the evidence discloses upon its face that the declarant was interested in the estate of his father, and the paper-writing was executed and recorded for the express purpose of preserving the evidence of the controversy. Furthermore, the caveators are not named in the affidavit and the paper-writing expressly declared that the wife of the declarant "as being my lawful and weded wife, becomes heir to said property at my death, and if I should die before this matter is settled, the undersigned one will administer on my estate and pay to said as now Mrs. G. A. Hargrove the same." Indeed, the affidavit was wholly hearsay of the clearest type, and had no bearing whatever upon the mental capacity of the testatrix, which was the only material subject of inquiry at the trial.

There are many other exceptions earnestly debated by counsel on both sides, but as a new trial must be awarded, the court deems it inadvisable to discuss these exceptions for the reason that it is wholly impossible to anticipate what evidence will be offered at the next trial, or whether the same exceptions will be presented in similar form.

New trial.